**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES WALKER,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 11-1659** |
| **ANDREW J. STERN, ET AL.,** | : | |
| **Defendant.** | | |

## MEMORANDUM

**Tucker, J.** **August ___ , 2012**

Presently before the Court is Plaintiff's Complaint (Doc. 1)[1], Defendants' Kline & Specter and Andrew J. Stern Motion to Dismiss (collectively "Legal Defendants") (Doc. 13), Defendant Court of Common Pleas of Philadelphia County's Motion to Dismiss ("Judicial Defendants") (Doc. 20), Defendant Angie Otero a/k/a Angie Jones ("Otero") Motion to Dismiss, (Doc. 28) and Plaintiff's Response in Opposition thereto (Doc. 16, 25 and 26). Upon careful consideration of the parties' submissions and for the reasons set forth below, Defendants' Motions to Dismiss are granted and Plaintiff's Complaint is dismissed with prejudice.[2]

---

[1] The Complaint purports to be in the name of Charles Walker and Kiara Walker, the deceased daughter of Charles. However, throughout this Memorandum "Plaintiff" will refer singularly to Charles Walker.

[2] Since the initiation of his case, Plaintiff has filed multiple motions which include: 1) Motion for Temporary Restraining Order and Preliminary Injunction on December 13, 2011 (Doc. 12); 2) Request for Alias Summons (Doc. 14, 17); 3) Motion for Default Judgment Against All Defendants (Doc. 15); 4) Motion for Appointment of Counsel and/or in Opposition to Defendant's Motion to Dismiss (Doc. 16); 5) Motion for Extension of Time to Reply to Defendant Court of Common Pleas of Philadelphia County's Motion to Dismiss (Doc. 21); 6) Motion for Default Judgment Against Angie Otero (Doc. 22); 7) Motion in Opposition to Defendant's Motion to Dismiss and Amended Motion for Temporary Restraining Order And/Or Preliminary Injunction (Doc. 25); 8) Counter-Motion to Dismiss Petitioner Angie Otero's Complaint (Doc. 26); 9) Motion to Withdraw Motion for Default Against Angie Otero (Doc. 27); 8) Motion in Opposition to Defendant Angie Otero Jones' Motion to Dismiss and/or for Appointment of Counsel to Conduct Discovery and Response to All Defendant's Pending Motions to Dismiss (Doc. 30); and 9) Motion for Emergency Stay and Hearing (Doc. 32, 33). For the reasons

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Charles Walker is an inmate presently confined at Fayette County Prison. Defendant Angie Otero a/k/a Angie Jones, is the mother of Plaintiff's two children, Kiara Walker, now deceased, and Cyani Walker. Defendant Andrew Stern, is an attorney employed by Defendant Kline and Specter, and represented Ms. Otero in the underlying medical malpractice suit. Defendant Philadelphia Court of Common Pleas (hereinafter "Judicial Defendants") presided over Plaintiff's case involving the custody of his daughter Cyani Walker. (Compl. 3-8.)

*Pro se* Plaintiff, Charles Walker filed this action under 42. U.S.C. §§ 1983 and 1985 against the Defendants for alleged violations of his First, Fourth, Eighth and Fourteenth Amendment Constitutional rights. Plaintiff also seeks relief under various Pennsylvania state laws including breach of contract, fraud, misrepresentation and loss of consortium. Plaintiff's allegations are broad and include a detailed narrative of several court proceedings, however the crux of his claims revolve around a medical malpractice lawsuit for the wrongful death of his infant daughter, Kiara. In his Complaint, Plaintiff alleges that Defendant Otero and her attorney, Defendant Andrew Stern, conspired to deprive him of his right to recover his share of the settlement award from the medical malpractice suit by tricking him into signing a waiver of claims. He also alleges that the two Defendant's in furtherance of their conspiracy to deprive him of the his inheritance rights, conspired to have Defendant Otero appointed as administratrix

---

discussed in this Opinion, the Court has concluded that Plaintiff does not have a valid claim against any of the named Defendants. Therefore, in light of the Court's determination, Plaintiff's remaining motions will not be addressed and are denied as moot.

of Kiara's estate.  Plaintiff also alludes to a conspiracy between Defendant Otero and the Court of Common Pleas of Philadelphia County involving the custody of his other daughter, Cyani Walker.  (Compl. ¶¶ 1 -2, 11, 14 and 15.)

The facts construed in the light most favorable to Plaintiff are as follows.  On August 30, 2005, Defendant Angie Otero filed a medical malpractice lawsuit against Temple University Hospital after her infant daughter, Kiara, succumb to complications from hypoplastic left heart syndrome.  Prior to the commencement of the malpractice suit, on August 25, 2005, Plaintiff, upon the advice of Andrew Stern and Angie Otero, signed a waiver of claims relinquishing his rights in the suit. (Compl. ¶ 10.)  In 2006, the parties reached a settlement agreement, awarding Otero $2.25 million in damages.  On December 4, 2006, the Office of the Register of Wills of Philadelphia issued letters of administration, naming Otero as the administratrix of Kiara's estate.  (Pl.'s Exhibit 4 and 5.)  During such time, Plaintiff received a notice of the estate stating that he was entitled to a portion of the proceeds.  Shortly thereafter, upon Plaintiff's request, a hold was placed on the funds and a hearing was held to determine the administration of Kiara's estate.  By Order dated December 14, 2006, the Philadelphia Court of Common Pleas, after having considered the waiver signed by Plaintiff and the other materials submitted relating to the Petition, allocated and distributed the settlement proceeds, but did not distribute any of the settlement funds to Plaintiff.  (Compl. ¶ 16.) [3]

---

[3] Also included as exhibits in Plaintiff's Complaint was a series of letters written by Plaintiff to Legal Defendants and to Jay R. Wagner, counsel for the Estate of Kiara Walker.  The correspondence between Plaintiff and Legal Defendants, dated January 2, 2008 and June 18, 2009, includes the same arguments asserted by each party in their respective filings.  Plaintiff's letters to Mr. Wagner, dated May 23, 2007, June 17, 2007 and three letters dated June 28, 2007 were all returned to him by letter dated July 20, 2007, and recommend that Plaintiff seek legal counsel.  Also included as an exhibit was a copy of a letter dated February 27, 2007 from Philadelphia attorney Austin J. McGreal to Plaintiff's aunt, Katrina

Thereafter, on May 4, 2006, Otero filed a Complaint for custody of Cyani Walker in the Philadelphia Court of Common Pleas, Family Division. (Compl. ¶ 15.) On August 17, 2006, the court awarded Otero primary physical and legal custody of the child without prejudice to Walker, who was unavailable due to his incarceration. Walker later filed a pro se petition to modify the Order but failed to properly serve or notify Otero. On January 27, 2010 the court entered an Order granting Walker's request to participate telephonically in the custody hearing, which was rescheduled for June 28, 2010. Prior to the hearing, on June 21, 2010, Otero filed a petition for special relief seeking modification of the existing custody order to terminate Plaintiff's parental rights and prohibit him from contacting his daughter.[4] (Compl. 18; Pl.'s Exhibits 7, 16, and 17.)

Plaintiff filed suit against the Defendants in this Court on March 8, 2011, requesting the following relief: (1) declaratory judgment deeming Defendants' actions as stated unconstitutional and voiding both the waiver of claims and custody order; (2) a preliminary and permanent injunction freezing Defendants' assets in relation to the Estate of Kiara Walker, and enjoining enforcement of the custody order and/or further proceedings in relation to Plaintiff in the Court of Common Pleas; (3) compensatory damages from Defendants Kline & Specter and Andrew Stern in the amount of one million five hundred thousand dollars; and (4) liquidated and/or expectancy damages from Defendants Kline & Specter, Andrew Stern, and Angie Otero in the amount of Plaintiff's share of the settlement proceeds. (Compl. ¶¶ 27 - 32.) On March 18, 2011,

---

Walker, enclosing a copy of the court's December 14, 2006 Order distributing the settlement funds and stating that Mr. McGreal was not prepared to get involved in Plaintiff's case.

[4] Plaintiff filed several motions requesting an Emergency Hearing to enjoin the Court of Common Pleas from terminating his parental rights, The Court is unaware of the outcome of these proceedings as no further information was been provided.

the Court issued an Order closing Plaintiff's case because he failed to pay the $350.00 filing fee or to file a motion for leave to proceed *in forma pauperis*. (Doc. 2.) After filing several amended motions (Doc. 3, 5, 8), Plaintiff was granted leave to proceed with his action by the Court on October 14, 2011. (Doc. 9.)

In response to Plaintiff's Complaint, Defendants each timely filed their respective motions to dismiss.[5] Legal Defendants contend that Plaintiff's Complaint is barred by the applicable statutes of limitations. Defendant Court of Common Pleas argues that Plaintiff's suit against them is barred by Eleventh Amendment immunity and because a state court is not a person subject to suit under § 1983. Finally, Defendant Angie Otero requests that the Court dismiss Plaintiff's Complaint for failure to comply with the applicable statute of limitations and failure to properly effectuate service.

The Court will now address the pending motions in turn.

## II. Legal Standard

On a 12(b)(6) motion to dismiss the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). While the court will accept well-pled allegations as true for

---

[5] The Court acknowledges that Plaintiff filed a Motion for Default Judgment against all the Defendants (Doc. 15) alleging that they failed to timely respond to his Complaint. Legal Defendants notified the Court in advance that they were experiencing technical difficulties docketing their motion to dismiss on EFC. The Court therefore deemed Legal Defendants' motion as timely despite it being a day late. In support of his Request for Default against Judicial Defendants and Angie Otero, Plaintiff alleged that the Defendants failed to file a defense to his complaint. However, neither Defendant could have responded to Plaintiff's Complaint since Defendants had not yet been properly served. See (Doc. 11) (summons returned unexecuted as to Defendant, Court of Common Pleas); see also Alias Summons (issued to Defendants Angie Otero and Court of Common Pleas on February 13, 2012).

the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

The court will grant a 12(b)(6) motion if the alleged facts, taken as true, fail to state a claim for relief. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397–98 (3d Cir. 2000). In deciding whether to grant the motion, the court generally considers the allegations contained in the complaint, orders, matters of public record and exhibits attached to the complaint. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The court may also consider exhibits attached to the defendant's motion to dismiss if the plaintiff's claims are based on such documents and the documents are undisputedly authentic. Id.

## III. DISCUSSION

For the reasons that follow, the Court finds that Plaintiff has failed to allege any facts giving rise to any cognizable claims against the Defendants. Accordingly, Plaintiff's Complaint must be dismissed with prejudice.[6]

### A. Plaintiff's Claims Against Legal Defendants

Legal Defendants argue that Plaintiff's claims against them, which include legal malpractice, fraud, and misrepresentation, are barred by the applicable statute of limitations. The "Third Circuit Rule" permits a limitations defense to be raised in a 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought

[6] The Court notes that granting any future request for leave to amend Plaintiff's Complaint would be futile as Plaintiff cannot amend the Complaint to state a claim.

within the statute of limitations . . . . If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).

Pursuant to 42 Pa.C.S § 5524(7), the applicable statute of limitations for negligence-based claims including deceit or fraud is two years. See Wachovia Bank, N.A. v. Ferretti, 935 A.2d 565, 570 (Pa. Super. 2007).  In Pennsylvania, the statute of limitations begins to run at the "time the right to institute and maintain the suit arises".  Pocono Int'l Raceway v. Pocono Produce, Inc., 503 Pa. 80, 468 A.2d 468, 471 (1983).  However, where a plaintiff could not reasonably have discovered his injury or its cause, Pennsylvania courts employ the discovery rule to toll the statute of limitations.  Knopick v. Connelly, 639 F.3d 600, 607 (3d Cir. 2011)(citations omitted).  Under the discovery rule, the two-year period begins to run when the plaintiff knew or in the exercise of reasonable diligence should have known of the breach. Id.

As mentioned above, Plaintiff's claims against Legal Defendants stem from Plaintiff's execution of the August 25, 2005 waiver of claims form.  In the Complaint, Plaintiff alleges that while he was incarcerated and prior to Legal Defendants filing of the underlying claim on behalf of Defendant Otero, Defendants Andrew Stern and Angie Otero tricked him into forfeiting his right to recover in the suit.  Plaintiff admits that he signed the waiver on the given date, but alleges that Stern and Otero deceived him into believing that by executing the waiver, he would only be forfeiting his right to attend the underlying trial, and not his right to share in the potential recovery.   Plaintiff further alleges that Defendant Stern acted in bad faith and in concert with

Angie Otero to have her appointed as administratrix of Kiara's estate, which Plaintiff alleges assisted in Defendants' conspiracy to deny him of his share of the settlement proceeds.

In opposition, Legal Defendants argue that Plaintiff's tort claims against them are untimely because Plaintiff filed suit on March 8, 2011, yet the face of the Complaint reveals that Plaintiff was aware of Legal Defendant's alleged fraud, misrepresentation and legal malpractice more than four years earlier when Plaintiff caused a hold to be placed on the settlement proceeds and a hearing was held regarding the administration of Kiara's estate, prior to the court's entry of its December 14, 2006 Order distributing the settlement proceeds. Defendants further contend that Plaintiff's legal malpractice claim must fail, irrespective of the limitations issue, because Plaintiff failed to allege that an attorney-client relationship existed between Plaintiff and the moving Defendants which is a necessary element of his claim.  Alternatively, Defendants argue that even if an attorney-client relationship could be inferred from the Complaint, any such relationship was terminated when Plaintiff signed the waiver of claims on August 25, 2005 which means that Plaintiff 's opportunity to timely file suit expired on August 25, 2007.[7]

---

[7] Defendants incorrectly argue that the statute of limitations for a legal malpractice claim begins to run upon the termination date of the attorney/client relationship.  Defendants misinterpreted the court's holding in M.A. v. Brabender, 839 A.2d 1133 (Pa.Super. 2003) (citations omitted), which is limited to criminal legal malpractice actions only. See also Bailey v. Tucker, 621 A.2d 108, 116 (Pa. 1993) (explaining that the statue of limitations for legal malpractice actions arising from the defense of a criminal case begins to run at the termination of the attorney/client relationship because at that point the aggrieved criminal defendant is aware of the injury (the conviction) and is on clear notice to investigate any alternate cause of that harm that he believes to exist). Rather, in civil legal malpractice actions Pennsylvania uses the "occurrence rule" to determine when the statute of limitations begins to run. Id. at 572.  Under such rule, the statutory period commences upon the occurrence of the alleged breach of duty. Id. Where a plaintiff could not reasonably have discovered his injury or its cause, however, Pennsylvania courts have applied the discovery rule to toll the statute of limitations. Knopick v. Connelly, 639 F.3d 600, 607 (3d Cir. 2011).

The Court also notes that the analysis remains the same in the instant case because the alleged breach of duty and termination of the attorney/client relationship -Plaintiff's execution of the waiver of

Viewing the Complaint in the light most favorable to Plaintiff, the record reveals that the statute of limitations for Plaintiff's fraud and misrepresentation claims against Legal Defendants was tolled until the entry of the court's December 14, 2006 Order when Plaintiff discovered that the waiver he signed precluded him from recovering any settlement proceeds. Therefore, for his claims to be timely Plaintiff must have filed suit by December 14, 2008.  Because Plaintiff did not file his Complaint until March 8, 2011, his claims are barred by the statute of limitations.

The Court also agrees with Defendants that Plaintiff's legal malpractice claim should be dismissed for failure to state a claim.  To establish a claim for legal malpractice, the plaintiff must show three elements: (1) the employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of damage to the plaintiff.  Knopick v. Connelly, 639 F.3d 600, 606 fn. 7 (3d Cir. 2011).  Here, the Complaint fails to satisfy even the first element.  In reading the Complaint and accompanying exhibits it is clear that Plaintiff did not view Andrew Stern as his lawyer and was aware that only Ms. Otero was represented by Legal Defendants in the medical malpractice suit.  Even if the Court gives Plaintiff the benefit of the doubt and assumes that Legal Defendants did in fact owe Plaintiff a legal duty on the basis of the waiver of claims form, Plaintiff's claims still fail because they are time-barred under the occurrence rule.  Under the occurrence rule, the statutory period for Plaintiff's claims began to run on the date that Plaintiff signed the waiver.  Plaintiff signed the waiver on August 25, 2005, however, he did not file suit

---

claims form- occurred on the same date.

against Legal Defendants until March 8, 2011.[8] Because Plaintiff's filing date is well beyond the applicable two year statutory period, Plaintiff's legal malpractice claim is time-barred.

**B. Plaintiff's Claims against Judicial Defendants**

Defendant Court of Common Pleas of Philadelphia County (the "Judicial Defendants") move for dismissal of Plaintiff's claims against it on the grounds that the Court is protected by Eleventh Amendment immunity.[9] The Eleventh Amendment provides that: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. CONST. amend. XI. The amendment acts as a jurisdictional bar which deprives federal courts of subject matter jurisdiction over claims asserted against states. Similarly, federal courts lack jurisdiction to hear claims asserted against state officials in their official capacities since such suits are treated as suits against the state. See e.g., Haybarger v. Lawrence Cnty. Adult Prob. and Parole, 551 F.3d 193, 198 (3d Cir. 2008). Eleventh Amendment immunity is not absolute, however. Id. A state may waive its Eleventh Amendment immunity by consenting to suit. Id. Alternatively, Congress may require a waiver of immunity as a condition to receive federal funding, although Congress can not order the waiver directly. Id.

In the instant case, Plaintiff filed suit against the Court of Common Pleas. Pennsylvania

[8] To file a timely legal malpractice claim Plaintiff should have filed his Complaint by August 25, 2007 or by December 14, 2008 at the latest, if the discovery rule is applied.

[9] Additionally, Judicial Defendants argue that Plaintiff's Section 1983 claims against them must be dismissed because the court is not a "person" subject to suit under the statute. The Court will discuss Plaintiff's Section 1983 claims in further detail later in this Opinion.

has not waived its Eleventh Amendment immunity, therefore Plaintiff's claims against the Judicial Defendants are barred.

## C. Plaintiff's Claims Against Angie Otero

Defendant Angie Otero now moves for the dismissal of Plaintiff's Complaint on the grounds that Plaintiff's claims against her are barred by the applicable statute of limitations and that Plaintiff failed to properly effectuate service of the Complaint.[10]

Plaintiff's state law claims against Defendant Otero are based on the same waiver of claims form previously discussed by the Court in its disposition of Plaintiff's tort claims against the Legal Defendants.[11] The Court previously determined that Plaintiff's claims against the Legal Defendants are time-barred. Because Plaintiff's claims against Defendant Otero are the same as those alleged against the Legal Defendants, the Court finds that Plaintiff's claims against Otero are also time-barred for the same reasons.

## D. Plaintiff's Section 1983 and 1985 Claims

To the extent that Plaintiff attempts to proceed with his claims under 42 U.S.C. §§ 1983 and 1985, his claims also fail.

---

[10] Because the Court resolved the issue on the 12(b)(6) motion, it is not necessary to address Defendant's service of process argument.

[11] Additionally, Plaintiff asserts state law claims of fraud and misrepresentation. Plaintiff alleges, inter alia, that during the administration hearing Otero misrepresented to the court that she was unaware of Plaintiff's whereabouts and that she later filed for custody of their daughter, Cyani Walker, in furtherance of Defendants' conspiracy to prevent him from receiving his portion of Kiara's estate. Plaintiff further asserts that Otero had no basis to terminate his parental rights and that she falsely misrepresented to the court that he attempted to extort money from her, which he also claims was in furtherance of Defendants' conspiracy to prevent him from receiving his inheritance.

1.  **Plaintiff failed to establish that Defendants violated his constitutional rights pursuant to § 1983**

42 U.S.C. § 1983 of the Civil Rights Act authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

By its terms, § 1983 does not create a substantive right; it merely provides a method for vindicating federal rights conferred by the United State Constitution and the federal statutes that it describes. Baker v. McCollan, 443 U.S. 137 (1979).  To prevail in a Section 1983 action, a plaintiff must prove: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 687, 749 n.9 (1999).

  a)  **Plaintiff's 1983 claims against Defendants Andrew Stern, Kline & Specter, and Angie Otero are dismissed because the Defendants are not state actors as required by the statute**

The Supreme Court has interpreted "under color of law" to require that a defendant in a § 1983 suit be a state actor. Lugar v. Edmonson Oil Co., 457 U.S. 922, 928-29 (1982); United States v. Price, 383 U.S. 787, 794 n.7 (1966); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141-42 (3d Cir. 1995); Francis v. Lehigh Univ., No. 10-cv-4300, 2011 WL 204749, at *4 (E.D.Pa. Jan. 24, 2011).  Generally state actors are government officials and its employees.  "A private individual can become a state actor for purposes of Section 1983 liability if he or she is a willful participant in joint activity with the state or its agents." Panayotides v. Rabenold, 35 F.Supp.2d

411, 419 (E.D. Pa, Jan. 27, 1999)(internal citations omitted). Here, Plaintiff contends that Defendants Stern, Kline & Specter and Angie Otero acted under color of state law and violated his constitutional rights. However, both Defendants are private individuals and unable to commit constitutional violations. Defendant Stern is a private attorney and Angie Otero is a private citizen.[12] Furthermore, the Complaint is devoid of facts necessary to demonstrate an agreement between Defendants and the State or its agents. Without allegations to suggest that Defendants participated in a joint activity with the state, neither Defendant qualifies as a state actor and thus is not subject to suit under Section 1983.

b) **Plaintiff's 1983 claims against Judicial Defendants are dismissed because the court is not a person subject to suit under the statute**

Plaintiff's Section 1983 claims against Judicial Defendants also fails. As a judicial district, the Court of Common Pleas is a component of the judicial branch of the Pennsylvania government and is therefore not considered a person subject to suit under section 1983. Callahan v. City of Philadelphia, 207 F.3d 668, 674 (3d Cir.2000). Even if the Court were to construe Plaintiff's Complaint liberally as required by the Supreme Court in Haines v. Kerner, 404 U.S 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), designating the Honorable Doris A. Pechkurow as the Defendant, his claims still fail because judges are absolutely immune from liability for the

[12] The Court notes that Angie Otero's role as the administratrix of Kiara's estate does not qualify her as a state actor because her conduct can not be said to be "fairly attributed to the state." See generally, Harvey v. Plains Tp. Police Dept., 421 F.3d 185 (3d Cir. 2005)(explaining that when the conduct complained of is the result of actions taken by an individual person the basic inquiry is whether the act of the individual or entity can be attributed to the state, or whether the actor was a person for whom the state may fairly be held responsible).

performance of judicial acts. Rumfola v. Murovich, 812 F.Supp. 569, 573 (W.D.Pa.,1992) (citing Pierson v. Ray, 386 U.S. 547, 554 (1967)). In his Complaint, Plaintiff submits that the court "is responsible for the custody and visiting rights of [his] daughter, Cyani Walker." (Pl.'s Compl. ¶ 8). Thereafter, Plaintiff makes no further allegations as to how the court, or the Honorable Doris A. Pechkurow acting as the presiding judge over his case, violated his constitutional rights. By Plaintiff's own admission the actions for which Plaintiff seeks to hold the court accountable are those carried out in the official capacity of the court. Based upon the relevant law, it is clear that Plaintiff lacks an arguable basis to support his claims.

2. **Plaintiff has failed to sufficiently plead that a conspiracy existed among the Defendants**

To prevail in a Section 1985 action, a plaintiff must prove that (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to deprive a person or class of persons of equal protection of the laws or equal privileges and immunities under the laws; (3) defendants committed an act in furtherance of the conspiracy; and (4) defendants' actions resulted in injury to the plaintiff. See Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006).

In his Complaint, Plaintiff contends that Defendants Andrew Stern, Kline & Specter and Angie Otero conspired to deprive him of his share of the settlement proceeds of Kiara's Estate. Plaintiff's Complaint also asserts claims against Defendant Angie Otero and the Philadelphia Court of Common Pleas , suggesting that the Defendants conspired to terminate his parental rights with regard to his other daughter, Cyani Walker. Although Plaintiff alleges a conspiracy between the various Defendants, the Court is not required to accept such conclusory statements as true. *Cf.* Ashcroft v. Iqbal, 556 U.S. 662 (2009). The Complaint is devoid of specific facts to

plausibly suggest that a conspiratorial agreement existed between any of the named Defendants. See Great Western, 615 F.3d at 178. Additionally, Plaintiff has failed to show that *pro se* litigants are considered a class for purposes of § 1985. Even if *pro se* litigants were considered as a class for purposes of the statute, Plaintiff has not presented any well-pleaded facts to show that any of the Defendants' actions were the result of a systematic bias against pro se litigants. Because the Complaint merely makes blanket assertions that all Defendants conspired together and engaged in illegal conduct, Plaintiff's allegations are insufficient to support a conspiracy claim. Accordingly, Plaintiff's Section 1985 claims against all of the named Defendants are dismissed.

## IV. **CONCLUSION**

For the reasons set forth herein, Defendants' Motions to Dismiss are granted with prejudice. An appropriate Order follows.